Shirley W. Davis *vs.* Monowatt Electric Corporation.

JUNE 22, 1951.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

Flynn, C. J. This proceeding under the workmen's compensation act, general laws 1938, chapter 300, was commenced by the filing of a petition by the employee for a "Review of Incapacity." It sought determination of the question of her "decreased earning capacity" and stated, as the substantial ground thereof, that "though she has sought employment, she has been unable to obtain it because of her disability." After a hearing in the superior court on an appeal from the decision of the director of labor a decree was entered denying and dismissing the

petition, and the cause is before us on the employee's appeal from that decree.

The evidence discloses the following facts. The petitioner employee was injured on March 19, 1946 by accident arising out of and in the course of her employment as a plastic molder with the respondent. While operating a power press she received injuries which required surgery to amputate the terminal phalange of the index finger and the terminal and part of the middle phalanges of the middle finger of her left hand. Her average weekly wages at that time were $39.96. A preliminary agreement was entered into by the parties and was approved by the director of labor. In addition to the weekly payments of ordinary compensation based on her total incapacity for work, she also was paid specific compensation under the act for the loss of parts of two fingers on the left hand. Article II, §12 (f) (g).

Subsequently the employer's petition to review that agreement was granted by the director of labor and was later heard in the superior court on the employee's appeal from that decision. At such hearing it appeared that at the time of the accident petitioner was a student at Pembroke College during the day and worked for respondent from 4 to 12 p.m.; that she had given up all intention of working again for respondent or for anybody; and that she intended to devote her efforts exclusively to her college studies in journalism in order to prepare herself to later pursue that occupation. At any rate the trial justice so understood her testimony and a decree was entered on May 12, 1947 finding that the employee was no longer totally disabled as a result of the injury sustained on March 19, 1946, and authorizing the termination of payments for total disability compensation. No appeal from that decree was taken by either party.

However, several years later, in 1949, the employee brought the instant petition in effect seeking to obtain

compensation for partial disability on the ground of alleged decreased earning capacity as evidenced chiefly by her inability to get a job because of her injury. At the hearing thereon in the superior court, without objection, all the records of the earlier case of the employer's petition for review were made a part of this proceeding. In addition petitioner also testified to certain other facts, namely, that she left college in March 1948 before completing her course and through an agency applied to several concerns for work. She was unsuccessful in such applications to the telephone company, Bulova Watch Company, Grinnell Company, United States Rubber Company, and the respondent.

During the period when she was thus seeking a position she worked for her father, who as a hobby published a newspaper known as "The Providence Chronicle." Excepting the editorials she did most of the work, which included at times operating the presses. However, because the paper was not really conducted for profit and had little income she received only $10 weekly, $6 of which was for her expenses.

On May 16, 1949 she obtained a temporary civil service appointment in the cash sickness division of the department of employment security for the state of Rhode Island. She first worked as a filing clerk and later operated a machine and did statistical research for which she received $30 weekly. She remained there until October 1, 1949 when she voluntarily left her work to accompany her husband to New York City. He was unemployed at the time and both hoped to obtain more gainful employment in New York.

Shortly after arrival in that city she obtained a position as secretary and typist in the advertising department of a newspaper which paid $30 weekly. According to her testimony, however, the stumps of her fingers were extremely sensitive, pressure on them caused considerable pain, and

she had difficulty in typing, gripping, or picking up things. She testified that she was dismissed on November 11, 1949 because the director felt that another person could do her work in about half the time required by her.

On cross-examination she testified that she was first attended by Dr. William Horan and later by her own doctor, Dr. James R. McKendry, and admitted that she had no doctor since the latter had discharged her sometime in the fall, or at the latest in December of 1946, as capable of working. She also explained that such fact did not indicate her fingers had ceased to bother her.

She further admitted that in answer to a question by the trial justice at the earlier hearing she had testified in substance that although Monowatt Electric Corporation had stopped hiring women in the molding department, where she had worked, it was nevertheless willing to make an exception in her case and had offered her old job to her; and that she did not want to work there any more because that job would require night work. When confronted with that testimony she attempted to explain it by stating: "They offered to make an exception and find something somewhere else, as I recall. They weren't taking women in that department any more." She further admitted that she did not feel she could do heavy work although, as she stated: "No one agreed with me but myself, but I didn't feel I could handle the job and college too."

Testimony from other witnesses from the personnel departments of certain companies was introduced to show that petitioner had applied for work at several concerns but was unsuccessful. At each of these places, however, the reason for refusing her application was that, because of business conditions, no help was being hired at the time and in some cases that old help was actually being laid off.

The trial justice disagreed with the employer's contention that the decree in the former case was res adjudicata re-

garding the employee's right to seek compensation for partial incapacity as distinguished from total incapacity. He held, in keeping with the case of *Esposito* v. *Walsh-Kaiser Co.*, 74 R. I. 31, that the unappealed decree was res adjudicata only as to its determination of her total incapacity and compensation therefor. But on all the evidence he expressed himself as in agreement with the trial justice in the earlier proceeding where it was found that the employee was no longer totally disabled and was capable of working; that she had been offered work which she was able to perform; and that she did not desire to return to work.

He further found that at that time her decision not to work any more was not based upon physical incapacity due to the injury but on her resolution to pursue her education for later work in an entirely different field; that the condition of petitioner's hand and fingers, as she admitted, was then no worse than on May 12, 1947 when she was capable of working; and that she had not established that she has a partial incapacity for work which has caused a diminution in her earning capacity.

Petitioner now contends that the decree is erroneous in that it is against the evidence and against the law, the other reasons of appeal being expressly waived. She argues that the evidence is uncontradicted and that the trial justice should have drawn an inference that petitioner was unable to obtain employment because of her disability; that this court is able to draw its own inferences from undisputed evidence, citing *Correia* v. *McCormick*, 51 R. I. 301; and that many texts as well as cases from other jurisdictions make it clear that partial compensation should be awarded on evidence showing that petitioner is unable to obtain work because of her physical incapacity equally as when the evidence shows actual incapacity to perform a given job after a trial.

We have examined the evidence and in our judgment it is open to different inferences that are conflicting. There

was evidence adduced from the earlier hearing to the effect that respondent had offered petitioner her ordinary work; that she was capable of doing that work; and that she voluntarily refused all work and took herself out of the labor market in order to pursue her studies and to prepare for some future and different occupation. At best the evidence here, including the testimony of petitioner, would permit an inference in favor of her present version of why she had refused a job with the respondent and why she had failed to obtain work elsewhere on some of her applications. But in our opinion such evidence was also open to a different inference and therefore did not require the trial justice to decide in her favor.

Petitioner also suggests that this court should be free to draw its own inferences from uncontradicted evidence. But petitioner appears to overlook the fact that the evidence here is open to different inferences and to that extent is conflicting; and further that the instant case is under the workmen's compensation act where the superior court is the trier of facts and where, in the absence of fraud, its decision based upon legal evidence is conclusive under the act. G. L. 1938, chap. 300, art. III, §6. The case of *Correia* v. *McCormick, supra,* is not authority in workmen's compensation cases to the extent advocated by the employee. See *St. Goddard* v. *Potter & Johnson Machine Co.,* 69 R. I. 90, 94.

The petitioner cites many cases in her brief to support the contention that her inability to obtain a position is of itself evidence of her partial incapacity. Those cases seem to us to be premised entirely on findings by a proper tribunal that there was a causal relation between the physical disability or injury of the worker and his inability to obtain employment which he was capable of performing. Such cases, therefore, are clearly distinguishable because here there is no evidence whatever that her physical disability was the cause of her inability to obtain work at any of the

places where she applied. None of them was in need of any new employees at the time.

In our judgment there is some legal evidence by way of reasonable inferences to support the trial justice's finding to the effect that petitioner had not established that her inability to obtain work was caused by her physical disability or partial incapacity and that her earning capacity had decreased. In the absence of fraud, and none is claimed, this finding is conclusive under the act.

The petitioner's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the superior court.

*Zietz, Sonkin, Michaelson & Stanzler, Julius C. Michaelson,* for petitioner.

*John P. Cooney, Jr.,* for respondent.